IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ERLENE LAHAPA ICHIMURA, trustee of the Erline Luka Lahapa Cabrinha Living Trust dated January 29, 2009, | ) ) ) ) ) | CIVIL. NO. 11-00318 SOM/RLP ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY |
| Plaintiff, | ) ) | DEFENDANTS DEUTSCHE BANK NATIONAL TRUST COMPANY AND ONEWEST BANK; ORDER DENYING |
| vs. | ) ) ) | DEFENDANT BANKS' MOTION TO SUBMIT A SUPPLEMENTAL DECLARATION |
| DEUTSCHE BANK NATIONAL TRUST CO., Trustee of the Harborview Mortgage Loan Trust, Series 2006-14; ONEWEST BANK, FSB; ENLOE ENTERPRISES, INC.; PRIVATE CAPITAL GROUP, INC.; PARKER ENLOE; and ANDREW SHIRLEY, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANTS DEUTSCHE BANK NATIONAL TRUST
COMPANY AND ONEWEST BANK; ORDER DENYING DEFENDANT
BANKS' MOTION TO SUBMIT A SUPPLEMENTAL DECLARATION**

I.        INTRODUCTION.

On May 18, 2011, Plaintiff Erlene Lahapa Ichimura, trustee of the Erlene Luka Lahapa Cabrinha Living Trust dated January 29, 2009, filed this action.  Ichimura claims that Cabrinha, now deceased, was defrauded by Defendants Enloe Enterprises, Inc., Private Capital Group, Inc., Parker Enloe, and Andrew Shirley (collectively, the "Enloe Defendants") in connection with a mortage refinancing.  Ichimura alleges that the Enloe Defendants convinced Cabrinha to refinance her existing mortgage and stole the equity she had built up.  After the

refinancing, Cabrinha transferred her real property into her trust.  Now that Cabrinha has died, Ichimura is the sole trustee and has settled with the Enloe Defendants.

Ichimura has withdrawn her claims of unconscionability (Count II), breach of fiduciary duty (Count III), fraud and misrepresentation (Count IV), and Due Process (Count IX), leaving for adjudication her claims of unfair and deceptive trade practices in violation of chapter 480 of Hawaii Revised Statutes (Count I), unlicensed brokering in violation of chapter 454 of Hawaii Revised Statutes (Count V), violations of the Fair Debt Collection Practices Act (Count VI), conducting a foreclosure in violation of chapter 667 of Hawaii Revised Statutes (Count VII), and negligence (Count VIII).  The remaining claims are asserted against Defendants Deutsche Bank National Trust Co., Trustee of the Harborview Mortgage Loan Trust, Series 2006-14, and OneWest Bank, FSB (collectively, "the Bank Defendants").  OneWest is the current holder of Cabrinha's note and mortgage and the servicer for the loan.  The Bank Defendants have moved for summary judgment.  That motion is granted.

The court also denies as unnecessary the Defendant Banks' motion to submit a supplemental declaration, ECF No. 63.

II.        **BACKGROUND FACTS.**

In February 2006, Kathleen Kaipoleimanu Siliga ("Manu"), Cabrinha's daughter, received an advertisement in the mail offering mortgage loans at 1% interest. <u>See</u> Declaration of Kathleen Kaipoleimanu Siliga ¶ 3, ECF No. 60-1. Manu says she responded to the advertisement and met Andrew Shirley of Enloe Enterprises a week later. <u>Id.</u> ¶¶ 4-5, 7. At that meeting, Parker Enloe, also of Enloe Enterprises, invited Manu to a seminar at the Ala Moana Hotel. <u>Id.</u> ¶¶ 6-7. Manu and Cabrinha attended the seminar in February 2006. <u>Id.</u> ¶ 8.

Manu says that, at the seminar, attendees were advised to "take out all the equity in their homes for investment." <u>Id.</u> ¶ 9. They were promised returns of 24% in two to four months. <u>Id.</u> ¶ 11. Cabrinha then refinanced her home, with Shirley acting as the broker. <u>See id.</u> ¶ 18.

In August 2006, Cabrinha submitted loan applications for a $612,500 adjustable rate mortgage loan at 1% interest. <u>See</u> ECF No. 60-5 and 60-6. Manu says that Shirley filled out these applications and Cabrinha signed them. <u>See</u> Siliga Decl. ¶ 23. A Truth-in-Lending disclosure dated August 4, 2006, indicates that the loan was to be at 1%. <u>See</u> ECF No. 60-14. But an August 4, 2006, Truth-in-Lending disclosure changed that interest rate to 8.071%. <u>See</u> ECF No. 60-19. Apparently, on August 4, 2006, Express Capital Lending lent Cabrinha the money. <u>See</u> Siliga

3

Decl. ¶ 21.  Cabrinha received about $365,000 from refinancing her loan.  She gave most of that money to Shirley to invest.  Id. ¶ 34.  Apparently, Cabrinha lost what she invested.

In or about February 2007, Shirley told Manu about an investment opportunity.  Cabrinha gave Shirley another $200,000 for this investment.  Id. ¶¶ 35-39.

In January 2009, Cabrinha executed her living trust, naming Cabrinha herself and her other daughter, Ichimura, as trustees.[1]  See id. ¶ 41; ECF No. 60-22.  Cabrinha died on June 27, 2009.  See Siliga Decl. ¶ 42.

Other than alleging that Enloe Enterprises was an agent of Express Capital Lending, the original lender, the Complaint does not suggest any wrongdoing by Express Capital.  See Complaint ¶ 11.  In connection with the Opposition to the present motion for summary judgment, Ichimura submits the Declaration of Charles Wheeler.  Wheeler purports to provide an expert legal conclusion that Express Capital and Enloe Enterprises were in a joint enterprise with the goal of increasing fees paid by consumers like Cabrinha.  See Declaration of Charles Wheeler, ECF No. 60-3.  Even assuming that this is a proper subject for expert testimony and that Wheeler qualifies as an expert, the court sees

---

[1]It is not clear who the current trustee is.  The Complaint was filed by Ichimura, in her capacity as trustee.  However, at the hearing, Plaintiff's counsel indicated that the current trustee might be Manu.  Whether Manu should be substituted for Ichimura does not affect the analysis of the trustee's claims.

nothing in his testimony that raises any factual issue concerning alleged wrongdoing by Express Capital.  The facts relied on by Wheeler do not demonstrate an agency relationship that makes the Enloe Defendants' alleged actions attributable to Express Capital.  Instead, Wheeler discusses things unrelated to any agency, such as Express Capital's payment of a yield spread premium to Enloe Enterprises and Express Capital's failure to follow its own requirements and industry standards before closing the loan.  These say nothing about the nature of any agency relationship or about how specific actions by the Enloe Defendants (now dismissed from this action) fall within the scope of that agency.  Nor are the failings by Express Capital identified by Wheeler the subject of any claim asserted in the Complaint.

Charles Boyle, of OneWest, says that Deutsche Bank has been the owner of Cabrinha's loan since November 2008, and that OneWest became the servicer of the loan in March 2009.  See Declaration of Charles Boyle ¶ 5, ECF No. 55-4.  Boyle says that no loan payments on Cabrinha's loan have been made since August 1, 2009.  Id. ¶ 7.  At the hearing on the present motion, Ichimura conceded the truth of the facts stated in this paragraph.  Given this concession, Defendant Banks' motion to submit a supplemental declaration, ECF No. 63, is denied as unnecessary.

Derek Wong, an attorney with the law firm of RCO Hawaii, says that he was instructed by Deutsche Bank to proceed with a nonjudicial foreclosure of Cabrinha's loan.  <u>See</u> Declaration of Derek Wong ¶¶ 1, 3, ECF No. 55-1.  He says that he mailed a Notice of Mortgagee's Intention to Foreclose Under Power of Sale to Cabrinha's address.  <u>See</u> <u>id.</u> ¶ 5.  The notice stated that the mortgagor was Cabrinha.  <u>See</u> ECF No, 60-23.  According to the return receipts, copies of the notice were mailed to Ichimura at Cabrinha's address and were received by "SIPI SILIGA."  <u>See</u> ECF Nos. 55-3.  At the hearing on the present motion, Plaintiff clarified that Siliga is Manu's husband (Ichimura's brother-in-law), who lives at the address.  Although Manu disputes that the notice was received by anyone in Cabrinha's family, <u>see</u> Manu Decl. ¶¶ 61-61, ECF No. 60-1, she fails to demonstrate that she has personal knowledge about whether her husband received the letter.  Manu's bald statement of nonreceipt does not raise a genuine issue of fact that rebuts the certified mail return receipts.

Manu says that she has applied for a loan modification, but that the Bank Defendants have denied that application.  <u>See</u> Siliga Decl. ¶ 63.  She says that she was told on October 29, 2012, that, because the living trust was not the original borrower, it could not obtain the modification.  <u>Id.</u> ¶ 68.

6

III.        SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg.

Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

IV.      **ANALYSIS.**

With respect to the unfair and deceptive trade practices claim asserted in Count I, summary judgment is granted in favor of the Bank Defendants.  Ichimura clarified in her supplemental memorandum, ECF No. 73, that she is not seeking money damages from the Bank Defendants based on the 2006 loan transaction.  To the extent Ichimura asserts a chapter 480 claim based on the Bank Defendants' alleged failure to mail her a proper notice of its intent to foreclose, summary judgment is

granted in favor of the Bank Defendants because Ichimura fails to raise a genuine issue of fact concerning that alleged failure. To the extent Ichimura argues that the Bank Defendants' conduct was unfair when they attempted to collect on the loan because they should have known that there were problems with the original loan, she fails to demonstrate facts supporting such a claim.  To the extent Ichimura seeks rescission of the original loan, she fails to establish the agency relationship pled in the Complaint that would allow attribution of any wrongful act by the Enloe Defendants to the original lender.  No other claim that the original lender's conduct was unfair or deceptive is included in the Complaint.

With respect to the unlicensed brokering claim asserted in Count V under section 454-8 of Hawaii Revised Statutes, the court grants the Bank Defendants summary judgment because the broker's conduct could only cause a contract with the brokers to be rescinded, not the loan.

With respect to the Fair Debt Collection Practices Act claim asserted in Count VI, the court grants the Bank Defendants summary judgment because there is no dispute that they are not debt collectors for purposes of that act.

With respect to the claim that the Bank Defendants conducted a foreclosure in violation of chapter 667 of Hawaii Revised Statutes asserted in Count VII, summary judgment is

granted in favor of the Bank Defendants because the claim is factually unsupported.

Finally, with respect to the negligence claim asserted in Count VIII, summary judgment is granted in the Bank Defendants' favor because they owed no duty to Ichimura.

### A.   Count I: Unfair and Deceptive Trade Practice Claim.

Count I alleges that the Bank Defendants violated chapter 480 of the Hawaii Revised Statutes, also known as Hawaii's Unfair and Deceptive Acts and Practices ("UDAP") law. For the most part, Ichimura's UDAP claim is not asserted against the Bank Defendants for anything they did.  To the contrary it is based on the conduct of the mortage broker and his company, the Enloe Defendants.

Section 480-2 of Hawaii Revised Statutes states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Two distinct causes of action exist under section 480-2: claims alleging unfair methods of competition and claims alleging unfair or deceptive acts or practices.  See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, 113 Haw. 77, 110, 148 P.3d 1179, 1212 (2006).  It appears that Ichimura is asserting an unfair or deceptive acts or practices claim.

The phrase "unfair or deceptive acts or practices in the conduct of any trade or commerce" is not defined in chapter

11

480.  See Eastern Star, Inc. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 132, 712 P.2d 1148, 1154 (Haw. App. 1985).  Hawaii courts have held that a "practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Id. at 133, 712 P.2d at 1154 (citations omitted). A deceptive act is defined as "an act causing, as a natural and probable result, a person to do that which he would not otherwise do."  Id.  A plaintiff establishes that there was "deception" under chapter 480 by demonstrating that there was: (1) a representation, omission, or practice that (2) was likely to mislead consumers acting reasonably under the circumstances when (3) the representation, omission, or practice was material. Tokuhisa v. Cutter Mgmt. Co., 122 Haw. 181, 195, 223 P.3d 246, 260 (2009).  A representation, omission, or practice is "material" if it involves information that is important to consumers and is likely to affect their conduct regarding a product.  Id.  Whether an act or practice is deceptive is judged by an objective "reasonable person" standard.  Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir. 2010) ("Hawaii's consumer protection laws look to a reasonable consumer, not the particular consumer.").

Nothing in the record indicates that either of the Bank Defendants did anything that violated Hawaii's UDAP law such that

either could be liable to Ichimura for monetary damages.[2]
Indeed, Ichimura clarified in her supplemental memorandum, ECF
No. 73, that she is not seeking damages from the Bank Defendants
based on the 2006 loan transaction, as they were not part of that
transaction.

To the extent Ichimura seeks monetary damages under
section 480-13 because the Bank Defendants did not send her a
notice of intent to foreclose, that claim is factually
unsupported.   The record before this court indicates that such a
letter was sent to Ichimura via certified mail and was signed for
by her sister's husband.

To the extent Ichimura argues that the Bank Defendants'
conduct was unfair when they attempted to collect on the loan
because they should have known that there were problems with the
original loan, she fails to provide facts supporting such a
claim.   Instead, Ichimura generally talks of "red flags."   She
complains that Express Capital paid a yield spread premium to
Enloe and that Express Capital failed to follow its own
requirements and industry standards concerning inclusion of the

---

[2]In her Opposition, Ichimura argues that the Bank Defendants
violated Hawaii's UDAP law via post-Complaint conduct.   Ichimura
says that the Bank Defendants led her to believe that she might
get a loan modification, when the Bank Defendants knew that their
policies prevented such a modification.   There are presently no
claims in the Complaint based on that conduct, so the issue of
whether Ichimura believes that the Bank Defendants settlement
negotiations were conducted in good faith is not properly before
this court.

loan rate on the loan application.  But she does not raise any genuine issue of fact concerning whether the Bank Defendants' conduct was "unfair" because she fails to show that it offended "established public policy" or was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Eastern Star, 6 Haw. App. at 133, 712 P.2d at 1154.

Ichimura's contention that "red flags" were apparent from a review of a loan file, without more, is insufficient to support her claim.  She does not demonstrate, for example, that payment of yield spread premiums is always illegal or that Express Capital did not cure the alleged deficiency concerning the interest rate with the most recent Truth-in-Lending Disclosure Statement that appears to have ultimately informed Cabrinha of the loan rate before she executed the loan documents. See ECF No. 60-19.

Ichimura has clarified that she is not seeking monetary damages from the Bank Defendants under section 480-2.  The court notes that it is not clear that she would have had statutory standing to do so in her capacity as trustee of Cabrinha's trust. Section 480-13(b) allows monetary damages to be awarded to "consumers" injured by violations of section 480-2.  Section 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who

14

commits money, property, or services in a personal investment."
Ichimura conflates herself as trustee with Cabrinha, who
allegedly suffered the section 480-2 injury flowing from the
Enloe Defendants' conduct concerning the loan formation and use
of loan proceeds.  Whether a trustee could be considered a
consumer for section 480-2 violation is a matter this court need
not here decide.

Although Ichimura is not seeking monetary damages under
chapter 480, that does not end the matter.  This court has
recognized that, although a bank may not have done anything in
violation of chapter 480 of Hawaii Revised Statutes, a mortgagor
can seek to have his or her mortgage documents declared void
pursuant to section 480-12 as long as the mortgagor is able to
place the parties in as close a position as they held prior to
the mortgage transaction.  See Beazie v. Amerifund Fin., Inc.,
2011 WL 2457725 (D. Haw. June 16, 2011).  This means that the
mortgagor must be able to tender the loan proceeds back to the
current mortgagee to avoid giving the mortgagor a windfall.  Id.

The Bank Defendants argue that Ichimura cannot tender
the loan proceeds back to them.  However, because this argument
is raised for the first time in the Bank Defendants' reply
memorandum, the court disregards it pursuant to Local Rule 7.4.

Ichimura has a more fundamental problem with her
rescission claim.  She fails to demonstrate any conduct on the

15

part of the original lender that justifies rescission of the loan under any count in the Complaint.  As discussed above, the Complaint's allegations focus solely on the original lender's alleged agency relationship with the Enloe Defendants.  But the mere existence of an agency relationship does not render a principal liable for every act by an agent.  A seller of a home who is represented by a real estate broker, for example, is not automatically subject to rescission of a sales contract if the broker breaches a promise to the buyer that the broker will find the buyer a tenant who will pay premium rent for the home.  Such a promise is beyond the scope of the agency.

Here, Ichimura does not even purport to define the agency relationship or explain how actions by the Enloe Defendants fall within its scope.  No facts in the record suggest the existence of an agency relationship.  To the extent Ichimura now claims that the original lender may have committed certain acts that justify rescission of the loan, those claims are not before this court because nothing in the Complaint put the Bank Defendants on notice that they were being sued based on those acts.

**B.    Count V: Unlicensed Brokering.**

Count V seeks rescission of Cabrinha's loan because Enloe, Enloe Enterprises, and Express Capital Lending allegedly

16

were not licensed as mortgage brokers, a violation of chapter 454 of Hawaii Revised Statutes.  See Complaint ¶¶ 98-101.

Ichimura argues that, pursuant to section 454-8 of Hawaii Revised Statutes, in effect at the time the loan closed in 2006, "Any contract entered into by any person with any unlicensed mortgage broker or solicitor shall be void and unenforceable."[3]  The problem with this argument is that, as recognized in City Bank v. Abad, 106 Haw. 406, 412, 105 P.3d 1212, 1218 (Ct. App. 2005), even if a mortgage broker was unlicensed, that fact would not void a mortgage because section 454-8 applies only to contracts with a broker.  The loan documents are unaffected by section 454-8, as they are between the mortgagor and the mortgagee, not between the mortgagor and a broker.  Id.  The Bank Defendants are therefore entitled to summary judgment on the unlicensed broker claim, as they are not brokers affected by section 454-8.

### C.    Count VI: The Fair Debt Collection Practices Act.

Ichimura asserts that the Bank Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), which prohibits abusive debt collection practices.  See 15 U.S.C. § 1692(a).  The Bank Defendants seek summary judgment on the FDCPA claim, arguing that they are not "debt collectors" for purposes of the act.  See

---

[3]Section 454-8 was repealed by Act 84, § 29, 2010 Sess. Laws, effective January 1, 2011.

15 U.S.C.A. § 1692a(6) (defining "debt collectors").  At the hearing on the present motion, Ichimura agreed that they are not debt collectors for purposes of the FDCPA and conceded that she has no viable FDCPA claim as a result.  Accordingly, summary judgment is granted in favor of the Bank Defendants.

> ### D.    Count VII: Conducting Foreclosure in Violation of Chapter 667 of Hawaii Revised Statutes.

Count VII alleges that the Bank Defendants violated chapter 667 of Hawaii Revised Statutes "by failing to give proper and required notice to Plaintiff, or to anyone else, of the foreclosure and their intent to foreclose."  See Complaint ¶ 109. It appears that Ichimura is asserting a violation of section 667-5(a)(1), which requires an attorney to give notice of a mortgagee's intention to foreclose a mortgage "not less than twenty-one days before the date of sale."  The Bank Defendants have moved for summary judgment, arguing that this claim is factually unsupported.  The court agrees.  First, because there was no sale of the property, section 667-5(a)(1) could not have been violated.  Second, as discussed above, the Bank Defendant's sent a notice of intent to foreclose to Ichimura at Cabrinha's address.  Sipi Siliga, Ichimura's brother-in-law who was living at the property, signed for it.  Under these circumstances, no violation of section 667-5(a)(1) occurred, and the Bank Defendants are entitled to summary judgment on Count VII.

18

### E.   Count VIII: Negligence.

Paragraphs 116 and 117 of the Complaint assert that the Bank Defendants were negligent in failing to process Ichimura's request for a loan modification and in proceeding with a foreclosure sale while evaluating a loan modification request. Defendants move for summary judgment on the negligence claim, arguing that they owed Ichimura no duty.  The court grants summary judgment in the Bank Defendants' favor.

As a general rule, "lenders do not owe their borrowers a duty of care sounding in negligence." Caraang v. PNC Mortgage, 795 F. Supp. 2d 1098, 1022 (D. Haw. 2011).  Because Ichimura does not demonstrate that the Bank Defendants were acting in anything but a lender capacity, they owed her no duty of care.  Id.

At page 23 of her Opposition, Ichimura identifies for the first time and with no discussion three duties that the Bank Defendants allegedly violated.  These are duties not hinted at in the negligence allegations in the Complaint.  Ichimura now says that the Bank Defendants should have known that the loan was defective when they bought the loan, that they should have provided notice of the foreclosure to a living person, and that they should have spoken to Ichimura about the debt when she attempted to call them.  Even assuming this court could properly consider these alleged duties, the Bank Defendants would be entitled to summary judgment on them.

19

To the extent Ichimura claims that the Bank Defendants "should have known that the loan was defective when the[y] bought the loan," she fails to demonstrate that she suffered any damages as a result of a breach of a duty owed to her.  It is undisputed that the loan has been in default because no payment has been made for nearly four years.  The Bank Defendants' purchase of the loan did not affect that default or the resulting attempts to collect the loan through a foreclosure process, as nothing in the record indicates that a different lender would have proceeded differently.  Nothing in the record indicates that the Bank Defendants were acting in anything but a lender capacity.  Accordingly, no duty was owed to Ichimura based on the Bank Defendants' purchase of the loan.

To the extent Ichimura now claims that the Bank Defendants should have provided notice of their intent to foreclose to a live person, the record reflects that it did so.

Finally, Ichimura fails to demonstrate any legal basis for imposing a duty on the Bank Defendants to have spoken with the trustee when she contacted them.  This appears to be a reference to the bank's alleged refusal to grant the trust a loan modification because the trust was not the original borrower.  Ichimura does not meet her burden as the plaintiff in the case of establishing that a lender has a duty to modify a loan such as the one in issue.  Ichimura cites no authority even suggesting

20

such a duty, and the court does not here determine whether such a duty exists.  The court instead looks to whether Ichimura shows on the present motion a basis for proceeding with Count VIII. She does not.

**V.       CONCLUSION.**

For the foregoing reasons, the court grants summary judgment in favor of the Bank Defendants.  The court will refrain from entering judgment and closing this case until June 7, 2013, to allow Ichimura to file a motion that requests leave to file any motion Ichimura feels is necessary, including a motion seeking leave to file an Amended Complaint that prays for rescission of the loan based on the original lender's conduct or damages based on settlement negotiations.  The court expresses no inclination as to how any such motion should be decided.

IT IS SO ORDERED.

DATED: Honolulu, May 16, 2013.



   /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Ichimura v. Deutsche Bank National Trust Co, et al., Civ. No. 11-00318 SOM/RLP; ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS DEUTSCHE BANK NATIONAL TRUST COMPANY AND ONEWEST BANK; ORDER DENYING DEFENDANT BANKS' MOTION TO SUBMIT A SUPPLEMENTAL DECLARATION